IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARVELL SEMICONDUCTOR, INC.,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　　　　／ | No. C-04-4265 MMC<br><br>**ORDER GRANTING MARVELL'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 35 U.S.C. § 285; VACATING HEARING**<br><br>(Docket No. 65) |

　　　　Before the Court is the motion for attorneys' fees and costs, filed August 26, 2005 by defendant Marvell Semiconductor, Inc. ("Marvell"), in which Marvell argues it is entitled to an award of fees and costs because plaintiff Realtek Semiconductor Corporation ("Realtek") knew or should have known Realtek could not prevail in the instant action at the time the complaint was filed. Realtek has filed opposition to the motion, to which Marvell has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court finds the motion appropriate for determination without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the November 4, 2005 hearing. For the reasons set forth below, the Court will GRANT the motion for attorneys' fees and costs.

## BACKGROUND

　　　　On October 7, 2004, Realtek filed the instant action, alleging Marvell infringes U.S.

Patent No. 6,433,608 ("the '608 patent") by "making, using, selling, offering for sale, importing and inducing others to use and sell gigabit Ethernet network controller chip products, including but not limited to Marvell's 88E8000, 88E8003, 88E8052, 88E1000, 88E1000S, and 88E1111 series products, and other products with similar functionality[.]" (See Compl. ¶ 9.)

On February 25, 2005, Marvell served interrogatories on Realtek, in which Marvell asked Realtek, in Interrogatories Nos. 1 and 2, to describe any patent infringement analysis of any Marvell product done at Realtek's request and to identify all documents on which Realtek relied to support its patent infringement claim. (See Compton Decl. Ex. A at 3-4; see also Second Barkan Decl. ¶ 2.) In responses dated March 28, 2005, Realtek stated it had acquired information relating to technical analysis of Marvell products from Chipworks, Inc. ("Chipworks"), and that Realtek had produced the entire Chipworks report to Marvell. (See Compton Decl. Ex. A at 4.) The Chipworks report, titled "Marvell 88E1000-RJJ GigabitEthernet Tranceiver Partial Circuit Analysis," is dated May 31, 2001, and states it was prepared exclusively for the use of Realtek. (See Menard Decl. Ex. F at RTL 000203-204.)

In Interrogatory No. 16, Marvell asked Realtek to describe the circumstances under which it first learned Marvell was infringing the '608 patent. (See Compton Decl. Ex. A at 13.) Realtek responded that it "first acquired detailed information regarding the accused 88E1000 product from the Chipworks report that Realtek received in December 2001." (See id.)

In Interrogatories Nos. 3 and 4, Marvell asked Realtek to identify the dates of conception and reduction to practice for each asserted claim of the '608 patent, to describe the activities showing diligence from conception to reduction to practice, and to describe in detail the facts and circumstances surrounding the invention of the subject matter described in the '608 patent. (See Compton Decl. Ex. A at 5.) Realtek did not respond in a substantive manner to Interrogatory No. 3, stating only that it would provide relevant

//

documents from which responsive information could be obtained.[1]  (See id.)  In a letter to Realtek dated April 27, 2005, Marvell stated it believed Realtek's responses to Interrogatories Nos. 3 and 4 were inadequate, and that Marvell was entitled to know whether Realtek intended to assert a conception date prior to the filing date of the application for the '608 patent.  (See Compton Decl. Ex. F at 1-2.)  On June 16, 2005, after the parties met and conferred about their discovery disputes, Realtek agreed that, no later than June 23, 2005, it would either provide detailed substantive responses to Interrogatories Nos. 3 and 4 or, in the alternative, stipulate that "all the inventive activity for the '608 patent took place in Taiwan."[2]  (See Compton Decl. Ex. K at 1-2.)  Realtek provided neither the promised information nor stipulation by June 23, 2005, and on June 29, 2005, Magistrate Judge Spero ordered Realtek to either sign, within 24 hours, a stipulation that all inventive activity of the '608 patent occurred only in Taiwan, or to provide, within 48 hours, full and complete responses to Interrogatories Nos. 3 and 4.  (See Compton Decl. Ex. L.)  On June 30, 2005, Realtek signed a stipulation stating that "all inventive activity for the '608 patent, including all activity related to conception and practice, took place in Taiwan."  (See Compton Decl. Ex. M.)

One week later, on July 7, 2005, Marvell served Realtek with notice of its intention to file a motion for terminating sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, on the ground that Realtek filed its complaint against Marvell when it "either knew or should have known that its lawsuit is legally barred because the very product it accuses of infringement is prior art to Realtek's '608 patent."  (See Compton Decl. Ex. CC.)  Specifically, Marvell stated that the Chipworks report, which was in Realtek's possession before it filed the instant action, showed the 88E1000 chip "was being actively

---

[1] It is unclear whether Realtek's full response to Interrogatory No. 4 has been provided to the Court.

[2] In Marvell's Preliminary Invalidity Contentions, served April 28, 2005, Marvell asserted that if the invention described in the '608 patent was invented in Taiwan, the '608 patent was not entitled to an invention date prior to its filing date, pursuant to 35 U.S.C. § 104.  (See id. Ex. N at 3-4.)

manufactured and sold before any priority date or invention date to which the '608 patent could be entitled."[3] (See id.) Realtek did not immediately respond to the Rule 11 motion. (See Compton Decl. Ex. Q.)

On July 15, 2005, Marvell filed a motion for summary judgment of invalidity of the '608 patent. In its motion, Marvell argued that the '608 patent was invalid, pursuant to 35 U.S.C. § 102(a) and (g), because Marvell's 88E1000 chip was both used by others and invented in the United States prior to Realtek's earliest possible invention date. (See Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,433,608 Pursuant to 35 U.S.C. §§ 102(a) and 102(g) ("Summary Judgment Motion"), filed July 15, 2005, at 1.) In its motion for summary judgment, Marvell contended that because all the inventive activity for the '608 patent took place in Taiwan, a country that was not a member of the World Trade Organization ("WTO") or a signatory to the North American Free Trade Agreement ("NAFTA") at the time the patent was filed, Realtek's earliest possible invention date, pursuant to 35 U.S.C. § 104, was January 2, 2001, the date the application for the '608 patent was filed.[4] Marvell submitted evidence that its 88E1000 product was made and sold during 2000, prior to the filing date of the application for the '608 patent. (See, e.g., Quan Decl., filed July 15, 2005, ¶ 6.)

Upon receipt of Marvell's motion for summary judgment, Realtek, by letter dated July 15, 2005, requested that Marvell "immediately provide all relevant documents and promptly schedule [the] necessary depositions." (See Compton Decl. Ex. P.)

On July 29, 2005, Realtek filed a response to Marvell's motion for summary judgment, in which it notified the Court that Realtek believed the motion was moot because it had provided Marvell, on July 28, 2005, with a covenant not to sue Marvell for infringement of the '608 patent and had asked Marvell to stipulate to dismissal of the action.

---

[3] In Marvell's Preliminary Invalidity Contentions, Marvell states that all of the accused Marvell products are similarly situated, (see Compton Decl. Ex. N at 2-4); Realtek does not argue to the contrary.

[4] It is undisputed that the application for the '608 patent was filed on January 2, 2001. (See Compl. Ex. A.)

4

1  (See Realtek's Opposition to Motion for Summary Judgment as Moot, filed July 29, 2005,
2  at 1 and Ex. A.)  Thereafter, the Court dismissed the action as moot.
3       On August 26, 2005, Marvell filed the instant motion for attorneys' fees and costs
4  pursuant to 35 U.S.C. § 285.

## LEGAL STANDARD

6       In patent actions, "[t]he court in exceptional cases may award reasonable attorney
7  fees to the prevailing party."  See 35 U.S.C. § 285.
8       "A case may be deemed exceptional when there has been some material
9  inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or
10 inequitable conduct in procuring the patent, misconduct during litigation, vexatious or
11 unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."  See
12 Brooks Furniture Mfg., Inc., v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).
13 "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be
14 imposed against the patentee only if both (1) the litigation is brought in subjective bad faith,
15 and (2) the litigation is objectively baseless."  Id.  A party seeking an award of fees under
16 § 285 must establish the predicate conduct by clear and convincing evidence.  See
17 Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989).
18      Even if the case is determined to be exceptional, the decision whether or not to
19 award attorneys' fees is within the Court's discretion.  See Brooks, 393 F.3d at 1382.
20 Examples of factors that may be considered in determining whether to award attorneys'
21 fees under § 285 are "the closeness of the case, the tactics of counsel, the conduct of the
22 parties, and any other factors that may contribute to a fair allocation of the burden of
23 litigation as between winner and loser."  See S.C. Johnson & Son, Inc. v. Carter-Wallace,
24 Inc., 781 F.2d 198, 201 (Fed. Cir. 1986).

## DISCUSSION

26      Marvell argues that it is entitled to fees, pursuant to 35 U.S.C. § 285, because
27 Realtek knew or should have known, before the instant action was filed, that Marvell's
28 products were prior art to the '608 patent, and because Realtek refused to provide answers

5

1 to interrogatories and deliberately prolonged discovery as to the relevant invention date of
2 the '608 patent.

### A. Prevailing Party

"Determination of the prevailing party is based on the relation of the litigation results to the overall objective of the litigation[.]" Brooks Furniture Mfg., Inc., v. Dutailier Int'l, Inc., 393 F.3d at 1381. Here, because Realtek's lawsuit against Marvell has been dismissed in its entirety, Marvell is the prevailing party.

### B. Frivolous Lawsuit

Marvell argues it is entitled to an award of fees because Realtek should have known that its patent infringement claim was not meritorious before it filed its complaint, i.e., that Realtek filed a "frivolous" lawsuit. (See Mot. at 2:11-13); see also Haynes Int'l, Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1994) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless.") As noted, "[a]bsent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Brooks, 393 F.3d at 1381.

#### 1. Subjective Bad Faith

If "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." See Eltech Systems Corp. v. PPG Industries, Inc., 903 F.2d 805, 811 (Fed. Cir. 1990). "A party confronted with the difficulty of proving what is in an adversary's mind must be at liberty to prove facts establishing that that adversary should have known, i.e. to prove facts that render the 'I didn't know' excuse unacceptable." Id. at 810. This is not to suggest that a showing of simple negligence will suffice. As the Federal Circuit has observed, however, "studied ignorance" is not the same thing as simple negligence. See id.

In the instant case, although Realtek denies knowing that the '608 patent was invalid

at the time it filed suit, (see Opp. at 3), it has admitted to relying on the Chipworks report for its pre-suit investigation. (See Compton Decl. Ex. A at 4, 13.) The Chipworks report states, at the bottom of the first page of text: "All of the information in this report was derived by Chipworks from high magnification photographs and microscopy observations of the following sample: Marvell, 88E1000-RJJ Gigabit Ethernet Transceiver; 0040 date code; (M)©2000 MARVELL E1000 die markings." (See Mernard Decl. Ex. F at RTL 000206.) Page nine of the report, titled "Device Summary Sheet," under the sub-heading "Part Identification," identifies the analyzed product as follows: "Manufacturer: Marvell Semiconductor, Inc.; Part Number: 88E1000-RJJ; Type: Gigabit Ethernet Transceiver; Die Markings: (M)©2000 MARVELL E1000; Date Code: 0040."[5] (See id. at RTL 000214.) Nearly every page of the report following page nine repeats the "part identification" information, including "(M)©2000 MARVELL" and "Date Code 0040," at the bottom right corner of the page. (See, e.g., id. at RTL 00216.) Also included is a photograph of the subject chip, showing the above-described die markings. (See id.)

    Marvell argues that Realtek should have recognized that the 2000 mask work and copyright dates indicated that the chip in question had been manufactured in 2000. Marvell further argues that if Realtek had any doubts about the significance of the 2000 mask work and copyright dates, it should have contacted Chipworks to determine when the chip was purchased. Marvell submits evidence that, on December 6, 2000, Chipworks purchased an Intel network card containing the chip in question, and received it the following day, December 7, 2000. (See Menard Decl. ¶¶ 2-7.) Realtek provides no explanation as to why the 2000 mask work and copyright dates did not provide notice that the chip analyzed in the Chipworks report was manufactured and in use by the public in 2000.

    Marvell further submits evidence that the "0040 date code" indicates the product was manufactured in the 40th week of the year 2000. (See Quan Decl. ¶ 2.) Realtek argues, without citation to any declaration or other evidence, that it could not have been expected

---

[5] The mark "(M)" represents a registered mask work.

to know the meaning of Marvell's date code.  Assuming, arguendo, that Realtek did not know the meaning of Marvell's date code, Realtek, as noted, provides no explanation as to why the 2000 mask work and copyright dates did not put Realtek on notice that the chip in question was manufactured and in use by the public in 2000.  Nor does Realtek explain why Realtek, having been apprised by Chipworks that the Marvell chip analyzed by Chipworks was stamped with a coded date of manufacture, failed to contact Chipworks to ascertain that date.  Accordingly, the evidence is undisputed that Realtek had notice, prior to filing suit, that the chip analyzed in the Chipworks report was manufactured and in use by the public in 2000.

Marvell further argues, and Realtek does not dispute, that the earliest invention date Realtek could assert for the '608 patent is the filing date of the patent, January 2, 2001.  Subject to exceptions not relevant here, an inventor may not establish a date of invention by reference to activities in any foreign country other than a NAFTA country or WTO member country.  See 35 U.S.C. § 104(a).  As noted, Realtek has stipulated that all inventive activity relating to the '608 patent occurred in Taiwan.  (See Compton Decl. Ex. M.)  Taiwan was not a NAFTA or WTO member country at the time the '608 patent was filed.  (See Compton Decl. Exs. Y and Z.)  Although Taiwan later joined the WTO, (see id. Ex. Z), the Patent and Trademark Office has stated that the effective date for proving inventive activity in a foreign country, pursuant to 35 U.S.C. § 104, is "the date the country becomes a member of the WTO."  (See id. Ex. Y at 5.)  Thus, Marvell correctly states that any inventive activity Realtek conducted in Taiwan prior to January 2, 2001, the date it filed the application for the '608 patent, is irrelevant under § 104 because Taiwan was not a WTO member at the time the patent application was filed.  Realtek does not argue to the contrary.

In sum, Realtek knew or with a minimum of effort could have known the following facts well before it filed the instant lawsuit on October 7, 2004: (1) all of the inventive activity for the '608 patent occurred in Taiwan; (2) Taiwan was not a member of the WTO or a NAFTA country at the time the '608 patent was filed; (3) inventive activity taking place

in non-WTO or non-NAFTA member countries is irrelevant for purposes of establishing invention dates in the United States; (4) the Marvell product accused of infringement was copyrighted and made in 2000; and (5) the accused product was made and sold to the public prior to the date the '608 patent was filed.

Realtek argues that it acted in good faith, because as soon as Marvell revealed the meaning of the "0040" date code to Realtek, it voluntarily dismissed the lawsuit and executed a covenant not to sue Marvell. As noted, however, Realtek should have known, prior to filing suit, that it could not prevail on its lawsuit against Marvell. As Marvell accurately observed in the course of the parties' correspondence, Realtek initiated the instant litigation "without investigating the facts staring them in the face." (See Compton Decl. Ex. X at 3.) Moreover, Realtek does not explain why it continued to pursue the instant lawsuit after April 8, 2005, the date on which Marvell produced sales data showing numerous sales of the accused product during the year 2000, (see Compton Decl. ¶ 16 and Ex. O), or after April 28, 2005, the date on which Marvell served its preliminary invalidity contentions stating that the accused products had been reduced to practice in 2000, (see Compton Decl. ¶ 15 and Ex. N at 2.)

Realtek further argues that Marvell's failure to immediately assert the defense that Marvell's products are prior art to the '608 patent demonstrates the issue was not initially apparent to either party, and, thus, Realtek did not act in bad faith by filing the instant lawsuit. Marvell had no basis for raising the issue, however, until it learned that the inventive activity for the '608 patent took place in Taiwan. Realtek, on the other hand, was aware or should have been aware of where its own inventive activity took place prior to the filing of the instant action.[6]

A patent is invalid if "the invention was known or used by others in this country . . . before the invention thereof by the applicant for patent." See 35 U.S.C. § 102(a). Here, Realtek knew or should have known, before filing the instant lawsuit, that it had no chance

---

[6] As noted, Realtek cannot seek to excuse its conduct by resort to "studied ignorance." See Eltech, 903 F.2d at 810.

of success on the merits of its infringement claim, because Marvell's allegedly infringing product was made and sold before the invention date of the '608 patent. As noted, if "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." See Eltech, 903 F.2d at 811.

Accordingly, the Court finds that Realtek acted in subjective bad faith by filing the instant action against Marvell.

### 2. Objectively Baseless Litigation

A lawsuit is objectively baseless when "no reasonable litigant could realistically expect success on the merits." See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). For the reasons set forth above, the instant litigation was objectively baseless, because no reasonable litigant could have expected to prevail on a claim of patent infringement when the allegedly infringing product constitutes invalidating prior art.

### 3. Summary

For the reasons set forth in detail above, the Court finds the instant litigation (1) was brought in subjective bad faith and (2) the litigation was objectively baseless.

Accordingly, the Court finds the instant case is "exceptional" within the meaning of 35 U.S.C. § 285.

### C.    Litigation Misconduct

Marvell further argues it is entitled to fees under § 285 because Realtek, in addition to filing and maintaining a frivolous lawsuit, engaged in litigation misconduct by ignoring its discovery obligations. In particular, Marvell argues that Realtek "dragg[ed] out discovery on the only issue needed to ripen the case for summary judgment; i.e., the invention date of Realtek's '608 patent." (See Motion at 2.)

The Federal Circuit has held that a case "may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation. See

Brooks, 393 F.3d at 1381.

As noted, Realtek failed to provide a substantive response to Marvell's interrogatories directed to the circumstances surrounding the invention of the subject matter claimed in the '608 patent. (See Compton Decl. Ex. A at 5.) Marvel submits evidence that it repeatedly expressed its concerns to Realtek, beginning on April 27, 2005, about the sufficiency of Realtek's interrogatory responses. (See id. Exs. F-J.) When the parties met and conferred on June 16, 2005, Realtek's counsel told Marvell's counsel he was unaware of any activity related to the invention claimed in the '608 patent that took place outside of Taiwan, that he hoped to be able to confirm that fact within a week, and he anticipated that once he was able to obtain such confirmation, Realtek would so stipulate. (See DeBruine Decl. ¶ 8; see also Compton Decl. Ex. K.) Nevertheless, Realtek did not provide a stipulation to that effect until June 30, 2005, when ordered to do so by Magistrate Judge Spero.

Although Realtek has offered an explanation for the delay, the Court need not determine whether Realtek has provided adequate justification for such delay, because Realtek has provided no explanation for its initial refusal to provide a substantive response to Marvell's interrogatories. Moreover, once Marvell filed its Rule 11 and summary judgment motions, Realtek, despite its having been made aware of Marvell's invalidity defense and provided with all the relevant dates, demanded that additional depositions be scheduled, and then refused to cooperate in scheduling them. (See Compton Decl. Exs. P, W.) Realtek fails to provide any explanation for such discovery abuses.

Whether categorized as protracting a "frivolous lawsuit" or as "misconduct," Realtek's failure to comply with its discovery obligations and its prolongation of discovery on a crucial issue in the case further supports a finding that the instant action presents an "exceptional case."

**D. Discretion To Award Fees**

As previously noted, once a court determines a case to be exceptional within the meaning of § 285, the decision whether or not to award attorneys' fees is within the court's

discretion. See Brooks, 393 F.3d at 1382. Factors to be considered in determining whether to award attorneys' fees include "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burden of litigation as between winner and loser." See S.C. Johnson, 781 F.2d at 201.

Here, the case was never close. For the reasons set forth above, Realtek knew or clearly could have known prior to filing suit that it would not prevail. In addition, Realtek has not justified its failure to provide discovery on the key issue, specifically, the invention date of the '608 patent, or its decision to wait until the last moment to dismiss the case.[7]

"The purpose of Section 285 is to reimburse a party injured when forced to undergo an exceptional case." Mathis v. Spears, 857 F.2d 749, 753 (Fed. Cir. 1988) (internal quotation omitted). Here, Realtek wasted Marvell's time and resources by instituting and dragging out a case it should never have filed.

Accordingly, the Court finds that an award of fees against Realtek is appropriate.

**E. Amount of Attorneys' Fees**

The Federal Circuit has held that, in awarding fees under § 285, "courts should not be, and have not been, limited to ordinary reimbursement of only those amounts paid by the injured party for purely legal services of lawyers, or precluded from ordinary reimbursement of legitimate expenses defendant was unfairly forced to pay." See Mathis v. Spears, 857 F.2d at 754. Consequently, courts may determine "the compensatory quantum of the award, including the amount of attorney fees, what if any expenses shall be included, and the rate of prejudgment interest, if any, on the award." See id.

Here, Marvell seeks an award of attorneys' fees in the amount of $541,215.50, plus litigation expenses (in addition to those set forth in its separately-filed bill of costs) in the

---

[7] Rule 11 provides that a motion for sanctions made under that rule "shall not be filed with or presented to the court unless, within 21 days of the service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." See Fed. R. Civ. P. 11(c)(1)(A). As noted, Marvell's motion for sanctions was served July 7, 2005, and Realtek waited until July 28, 2005, twenty-one days later, to provide Marvell with a covenant not to sue Marvell for infringement of the '608 patent and to ask Marvell to stipulate to dismissal of the action. (See Realtek's Opposition to Motion for Summary Judgment as Moot, filed July 29, 2005, at 1 and Ex. A.)

1  amount of $35,830.72, for a total award of $577,046.22 in fees and expenses incurred
2  through October 2005.  (See Barkan Decl. ¶¶ 6, 9; Second Barkan Decl. ¶¶ 8, 10; Third
3  Barkan Decl. ¶¶ 6, 10.)[8]  Marvell does not seek an award of prejudgment interest.  Realtek
4  has not challenged the amount of fees and costs sought by Marvell, but rather relies
5  entirely on its argument that Marvell is not entitled to any award of fees and costs.

6  　　　The Court has reviewed Marvell's statement of services, fees and costs and finds
7  that Marvell has adequately supported the amounts claimed.  Marvell has included a
8  statement of services performed, a summary of the time spent, the hourly rates charged,
9  and biographical information for each person who worked on the case.  (See Barkan Decl.
10 Exs. A-C; Second Barkan Decl. Exs. B and C; Third Barkan Decl. Ex. A.)

11 　　　Marvell has brought to the Court's attention an agreement between Marvell and its
12 attorneys whereby it will receive a credit of $27,821.68 in recognition of Marvell's providing
13 its attorneys with a certain volume of work, primarily on other matters, over a defined period
14 of time.  (See Second Barkan Decl. at ¶ 12:16-20.)  Because the purpose of § 285 is to
15 reimburse the injured party, see Mathis, 857 F.2d at 753, not to award more than the party
16 was required to pay, the Court will reduce the total award by the credited amount.

17 　　　Accordingly, the Court will award Marvell a total of $549,224.54 in fees and
18 expenses incurred through October 2005.

19 　　　**F.   Additional Sanctions Under Court's Inherent Powers**

20 　　　Finally, Marvell argues, the Court should invoke its inherent powers to further
21 sanction Realtek "in whatever amount the Court deems appropriate to deter [Realtek's]
22 abuse of the judicial process and the Court's resources."  (See Motion at 16.)

23 　　　Federal courts have the inherent power to "assess attorney's fees when a party has
24 acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  See Chambers v.
25 NASCO, Inc., 501 U.S. 32, 45-46 (1991) (internal quotation and citation omitted).  When
26 there is bad-faith conduct in the course of litigation that could be adequately redressed

---

[8] In filing this last declaration after the filing of its reply, Marvell did not comply with Civil Local Rule 7-3(d).  The Court nonetheless has considered it.

under a statute or the Federal Rules of Civil Procedure, however, "the court ordinarily should rely on [that authority] rather than the inherent power." See id. at 50.

Because the Court has adequately compensated Marvell by means of an award of fees and costs, pursuant to 35 U.S.C. § 285, it declines to invoke its inherent power to further sanction Realtek.

## CONCLUSION

Accordingly, the Court hereby GRANTS Marvell's motion for attorneys' fees and expenses, in the total amount of $549,224.54. This ruling is without prejudice to Marvell's seeking additional costs pursuant to its pending bill of costs.

This order terminates Docket No. 65.

**IT IS SO ORDERED.**

Dated: November 18, 2005

MAXINE M. CHESNEY
United States District Judge